**Santarelli v. National Book Company Inc.**

C.P. of Lackawanna County, no. 96 CIV 988.

*Peter G. Loftus,* for plaintiff.
*Howard A. Rothenberg,* for defendant.

MINORA, *J.,* February 18, 1999—This action comes before the court by way of two individual defendants' motion for partial summary judgment. In the current case, plaintiff identified five defendants, of which three are corporations and the remaining two are individuals. Plaintiff's complaint against the above five defendants alleges three counts: (1) sex discrimination in employment; (2) age discrimination in employment; and (3) violation of the Equal Pay Act. Plaintiff, an adult female, alleges that while she was employed by defendant corporations, said corporations and the two individual defendants, acting in their capacity as managerial and/or supervisory personnel, discriminated against her based on her age and sex.

Instantly, the two individual defendants, who acted as plaintiff's manager and/or supervisor, maintain that they may not be sued either in their individual or official

capacities. Conversely, plaintiff opposes this motion and alleges under the Pennsylvania Human Relations Act (PHRA) that both individual defendants can be held liable based on their positions. An argument was held before this court on November 19, 1998, and the parties have briefed their respective positions. This memorandum and order follow.

## FACTS

Joan J. Santarelli, plaintiff, was born on July 20, 1942 and at the time of commencement of this action was 53 years old. On or about September 9, 1991, plaintiff was hired on a temporary basis by the defendant corporations. In her complaint, plaintiff has identified the following three corporations as defendants: (1) National Book Company Inc., as a subsidiary of Thames & Hudson; (2) W.W. Norton & Co. Inc., owner of National; and (3) Thames & Hudson Inc., as the parent company of National.

Subsequently, plaintiff agreed to stipulate to the dismissal of T & H as a defendant. The basis for plaintiff's stipulation was that plaintiff did not contest T & H's assertion that the only affiliation T & H had with National was a buyer/seller relationship. Furthermore, T & H stated that they are customers of National and not their parent company. In light of this assertion, plaintiff realized that T & H, as a customer and not a parent company, could not be held liable in this present case. Due to this stipulation, this court will not further address T & H as defendants. However, both National and Norton continue to be defendants.

Additionally, plaintiff lists the following two individual defendants: (1) Michael Charnogursky; and (2) John Errico. Plaintiff avers that Charnogursky and Errico are supervisors of both National and Norton, and

their positions enable them to hire and fire employees and to develop policy and procedure for said corporations.

Plaintiff avers that she was informed that if she worked eight hours a day for one year, she would become a full-time employee. Nonetheless, plaintiff alleges that in her eleventh month of employment, Charnogursky and Errico notified her that she would not be placed on full-time status. Plaintiff contends that Charnogursky and Errico explained the reason that she was ineligible for a full-time position was because she had a relative, Carol Jacobino, her husband's cousin, employed by the corporations. Plaintiff acknowledges that in or about 1983, National adopted a policy wherein an applicant would not be considered for full-time positions if he/she had a relative working for the company. Despite the above-cited policy, plaintiff maintains that National has numerous exceptions that apply to this policy. For example, plaintiff's complaint identifies such exceptions as: (1) relatives working for the company prior to the adoption of the policy; (2) individuals who became related while employed by the company; and (3) one individual who the company "inadvertently hired on a permanent basis, in 1988, because it was not known that he had a relative employed by National." Additionally, plaintiff names eight other employees in permanent positions hired by National who do not fit within any of the policy exceptions.

In addition, plaintiff alleges that temporary male employees were given back pay in a labor dispute; however, plaintiff received nothing. Plaintiff also contends that several male employees and other employees under the age of 40 were hired on a full-time basis. Conversely, plaintiff avers that two women under the age of 40, who had worked 40 hours a week for one year, have

not been hired as full-time employees. Plaintiff alleges that she is being discriminated against because of her age and sex, and has been denied full-time employment benefits, seniority, vacation, equal pay and advancement on a continual day-to-day basis.

On February 22, 1996, plaintiff filed a complaint in this matter. Defendants on May 1, 1996 filed an answer denying the allegations of the complaint and raised, as new matter, the fact that the individual defendants (Charnogursky and Errico) could not be responsible as supervisors or management. In addition, defendant T & H denied that it was in any way related to defendant National. On May 29, 1996, plaintiff responded with an answer to the new matter. On November 25, 1998, defendants (Charnogursky, Errico and T & H) filed a supplemental brief .in support motion for partial summary judgment. Therefore, this matter is now ripe for decision.

## DISCUSSION

The Pennsylvania Superior Court has held that the relevant elements necessary to permit summary judgment are as follows: "First, the pleadings, depositions, answers to interrogatories, admissions on file, together with any affidavits, must demonstrate that there exists no genuine issue of fact. Second, the moving party must be entitled to judgment as a matter of law." *Janson v. Cozen and O'Connor,* 450 Pa. Super. 415, 423, 676 A.2d 242, 246 (1996).

The court must also examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. Summary judgment is appropriate only in those cases which are free from doubt. *Pennsylvania State University v. University of Orthopedics,* 706 A.2d 863, 867 (Pa. Super. 1998).

Effective July 1, 1996, Rules of Civil Procedure 1035.1 through 1035.5 governing summary judgment replaced former Rule 1035. The essence of the revision set forth in Rule 1035.2 is that the motion for summary judgment now encompasses two concepts: first, the absence of a dispute as to any material fact set forth in *Pennsylvania State University, supra,* and second, the absence of evidence sufficient to permit a jury to find a fact essential to a cause of action or a defense. Rule 1035.2 is explicit in authorizing a motion based upon a record, which is insufficient to sustain a prima facie case, which in a jury trial would require the issues to be submitted to a jury.

Applying these Rules of Civil Procedure to the case at bar, we shall proceed to the plaintiff's motion for partial summary judgment.

The only issue currently before this court is whether or not the individual defendants (Charnogursky and Errico) can be held liable under the PHRA in their individual or official capacity in managerial and/or supervisory positions.

In making a decision on this issue, Charnogursky and Errico assert that courts look to the interpretation of title VII of the Civil Rights Act of 1964 as amended in 1991 when analyzing the PHRA. By following title VII, Charnogursky and Errico contend that courts have concluded that there can be no personal liability for supervisors or management. Likewise, Charnogursky and Errico maintain that because courts follow title VII's analysis when interpreting the PHRA, it also does not allow individual liability to extend to managers and/or supervisors.

Conversely, plaintiff alleges that Charnogursky and Errico's argument is based on the 1991 amendment to the Civil Rights Act of 1964. Further, plaintiff avers

that the Pennsylvania Legislature has not followed the amendment and, subsequently, the PHRA in the terms and conditions for discrimination, follows the original title VII and Age Discrimination in Employment Act (ADEA) interpretations. Plaintiff concludes that under the original title VII and ADEA, individual managers and/or supervisors could be held liable and, therefore, claims based on PHRA also should hold these individuals liable.

Pennsylvania law provides that when "interpreting the PHRA, Pennsylvania courts may look to federal court decisions interpreting title VII . . . ." *Hoy v. Angelone,* 456 Pa. Super. 596, 605, 691 A.2d 476, 480 (1997). Likewise, Pennsylvania courts may also consider federal interpretation of the ADEA in deciding claims under the PHRA. *Kelly v. Drexel University,* 94 F.3d 102, 105 (3d Cir. 1996). Although Pennsylvania courts may follow federal courts' interpretation of title VII when deciding PHRA claims, this is not mandatory. Specifically, the Pennsylvania Commonwealth Court has held that "the U.S. Supreme Court's construction of title VII does not require our court to construe the Pennsylvania Human Relations Act in the same fashion." *Harrisburg School District v. Commonwealth, Pennsylvania Human Relations Commission,* 77 Pa. Commw. 594, 599, 466 A.2d 760, 763 (1983).

In making our decision in the case at bar, we note that Pennsylvania law has not yet resolved this issue. Therefore, we will begin our analysis by examining whether an individual may be held liable under either title VII or the ADEA. We are mindful that federal courts' interpretations of the above two statutes are not binding on this court; instead we merely seek guidance in their respective analysis.

Under the ADEA, an employee may not be shielded from individual liability as an employer's agent in all circumstances, but an employee is shielded with respect to personnel decisions of plainly delegable character. *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 (4th Cir. 1994). In addition, the *Birkbeck* court held that the "ADEA limits civil liability to the employer and . . . an employee, is not a proper defendant." *Id.* Despite the *Birkbeck* court's finding, other federal courts have found individual liability under the ADEA. *House v. Cannon Mills Co.,* 713 F. Supp. 159, 160-62 (M.D.N.C. 1988). This court has found that federal courts have differing opinions as to whether or not an individual can be held liable under the ADEA, and, therefore, we find no guidance in relying on the ADEA's analysis in the present case.

We now turn our attention to federal analysis of individual liability under title VII. Here, we find that the law is clear and that the Third Circuit has held that individual employees cannot be held liable under title VII. *Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542, 552 (3d Cir. 1996). In addition, the United States District Court for the Eastern District of Pennsylvania has stated that the "relief granted under title VII is against the employer, not individual employees whose actions constituted a violation of the Act." *Goodwin v. Seven Up Bottling Co. of Philadelphia,* 1996 W.L. 601683, *3 (E.D. Pa. 1996). The *Goodwin* court relied on the *Dici* court cited above, when making its determination that the plaintiff as a matter of law failed to state a title VII claim, thereby dismissing the individual defendants. *Id.* Based on the aforementioned cases, we conclude that there is no individual liability under title VII. Despite our holding, we must now address the issue of individual liability under the PHRA.

To begin our analysis, we look to the pertinent part of the PHRA which makes it unlawful "[f]or *any person,* employer, employment agency or labor organization or employe, to aid, abet, incite, compel or coerce" in certain discriminatory practices. 43 P.S. §955(d). (emphasis added) Those discriminatory practices specifically identified in this statute include both age and sex. 43 P.S. §955(a). The definitional section of the PHRA defines the term "person" as including "one or more individuals," as well as any owner, manager, salesman or employee. 43 P.S. §954(a).

As previously stated, the court believes this is a case of first impression in Pennsylvania; however, this court has found two recent federal cases on point. Both cases were decided by the United States District Court for the Eastern District of Pennsylvania. First, in July of 1998, this district court stated that "title VII, the ADA, ADEA and PHRA are all to be interpreted consistently with one another such that individual employees are not to be held liable under these Acts unless a supervisory employee can be shown to have aided and abetted the employer's discriminatory actions in violation of the PHRA." *Cohen v. Temple Physicians Inc.*, 11 F. Supp.2d 733, 737 (E.D. Pa. 1998). Second, as recent as October of 1998, this same court maintained that "the PHRA differs from title VII," because under the PHRA §955(e) "an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory . . . for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision." *Davis v. Levy, Angstreich, Finney, Baldante,* 20 F. Supp.2d 885, 887 (E.D. Pa. 1998).

The *Cohen* court dismissed the individual defendants because it concluded that the plaintiff's complaint was

devoid of any allegations that these defendants aided, abetted, incited, compelled or coerced to discriminate against the plaintiff. *Cohen, supra* at 737. Similarly, the *Davis* court focused its attention on the aforementioned factors in determining whether to dismiss the complaint against the individual defendants. *Davis, supra* at 887. However, the *Davis* court denied the individual defendants' motion to dismiss the PHRA claim by concluding that the plaintiff sufficiently pled that these defendants "aided, abetted, incited, compelled and coerced unlawful and intentional discrimination against the plaintiff." *Id.*

This court finds guidance from the various federal courts analysis of the PHRA and we agree that the PHRA §955(e) is designed to hold individuals liable for a violation of this Act. We also concur that in order to hold an individual liable, the plaintiff's complaint must allege that the defendant aided, abetted, incited, compelled or coerced a discriminatory practice. Upon thorough review of plaintiff's complaint, we find no allegation that defendants Errico and Charnogursky in any way aided, abetted, incited, compelled or coerced the alleged discrimination against plaintiff. Therefore, defendants Errico and Charnogursky's motion for partial summary judgment is granted, but we will allow plaintiff 20 days to amend her complaint or proceed in the alternative without said claim against Errico and Charnogursky.

The basis for our decision to permit plaintiff to amend her complaint is that, as noted above, this is a case of first impression. We find that it would be inequitable to dismiss plaintiff's claim based on this heretofore unadjudicated matter without allowing the opportunity for an appropriate amendment by plaintiff if she deems the amendment applicable. Allowing an amendment

would not unduly prejudice Errico and Charnogursky. In making our determination, we seek guidance from the Pennsylvania Rules of Civil Procedure which states in pertinent part as follows: "[A] party, either by filed consent of the adverse party or by leave of court, may at *any time* change the form of action, correct the name of a party or *amend his pleading.*" Pa.R.C.P. 1033. (emphasis added) Additionally, "[T]he rules shall be *liberally construed* to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." Pa.R.C.P. 126. (emphasis added)

"With these two rules serving as our focal point, we have examined the relevant case law. It is well-settled that the decision to grant or deny permission to amend a pleading is a matter of judicial discretion." *Gutierrez v. Pennsylvania Gas & Water Co.,* 352 Pa. Super. 282, 285-86, 507 A.2d 1230, 1232 (1986). "Amendments should be allowed with great liberality at any stage of the case unless they violate the law or prejudice of the opposing party." *Id.* Moreover, a "court may, on its own motion, permit or require amendment of a complaint or other pleading." *Sullivan v. Allegheny Ford Truck Sales,* 283 Pa. Super. 351, 358, 423 A.2d 1292, 1295 (1980).

We are bound by the Pennsylvania Supreme Court's holding that when an "appellants' proposed amendment does not change the original cause of action, but rather merely amplifies it, the amendment would not result in any prejudice to appellee." *Connor v. Allegheny General Hospital,* 501 Pa. 306, 310, 461 A.2d 600, 602 (1983). Additionally, the Pennsylvania Supreme Court maintained that it is an abuse of discretion for a trial court to refuse a party to amend their complaint when such an amendment would not prejudice the opposing

party. *Id.* While we raise the issue of amendment sua sponte, we find these principles of law to be applicable in the interest of justice.

Therefore, we find that the appropriate amendment to plaintiff's complaint would not change their original cause of action, but merely amplify it, and, as such, we are allowing plaintiff the opportunity to amend said complaint if she so chooses. An appropriate order follows.

## ORDER

And now, to wit February 18, 1999, it is hereby ordered that the individual defendants Michael Charnogursky and John Errico's motion for partial summary judgment is hereby granted with the provision that plaintiff is allowed 20 days to amend her complaint or in the alternative proceed without a claim against Charnogursky and Errico. The parties are to proceed in a manner consistent with this opinion and order.